# UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS

_____

**No. ACM 39643**

_____

**UNITED STATES**
*Appellee*

**v.**

**Jacob D. LOZICKI**
Staff Sergeant (E-5), U.S. Air Force, *Appellant*

_____

Appeal from the United States Air Force Trial Judiciary

Decided 28 December 2020

_____

*Military Judge:* L. Martin Powell.

*Approved sentence:* Bad-conduct discharge and reduction to E-3. Sentence adjudged 8 November 2018 by GCM convened at Eglin Air Force Base, Florida.

*For Appellant:* Major Yolanda D. Miller, USAF.

*For Appellee:* Lieutenant Colonel Joseph J. Kubler, USAF; Lieutenant Colonel Brian C. Mason, USAF; Lieutenant Colonel G. Matt Osborn, USAF; Major Rachel S. Lyons, USAF; Mary Ellen Payne, Esquire.

Before LEWIS, D. JOHNSON, and CADOTTE, *Appellate Military Judges.*

Judge D. JOHNSON delivered the opinion of the court, in which Senior Judge LEWIS and Judge CADOTTE joined.

_____

**This is an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 30.4.**

_____

D. JOHNSON, Judge:

A general court-martial comprised of officer members convicted Appellant, contrary to his pleas, of two specifications of attempted sexual abuse of a child

in violation of Article 80, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 880,[1] and an additional charge of soliciting another to commit the offense of production of child pornography in violation of Article 134, UCMJ, 10 U.S.C. § 834.[2] The court-martial sentenced Appellant to a bad-conduct discharge and reduction to the grade of E-3. The convening authority approved the sentence as adjudged.

Appellant raises three issues on appeal: (1) whether the military judge erred when he denied the Defense's motion to dismiss Specification 2 of the Charge for unreasonable multiplication of charges; (2) whether the evidence is legally and factually sufficient to support the convictions for attempted sexual abuse of a child and solicitation to produce child pornography; and (3) whether the military judge erred when instructing on entrapment and emphasizing language in the written copy of the instructions provided to the members.[3] We also considered whether Appellant is entitled to relief due to presumptively unreasonable appellate delay. With respect to issue (3), we have carefully considered Appellant's contentions and find they do not require further discussion or warrant relief. *See United States v. Matias*, 25 M.J. 356, 361 (C.M.A. 1987).

We find no prejudicial error and affirm the findings and sentence.

## I. BACKGROUND

Appellant was a staff sergeant stationed at Eglin Air Force Base (AFB), Florida, when he responded to a personal advertisement on the "Casual Encounters" section of "Craigslist,"[4] entitled "Can be our secret – w4m[.]"[5,6] The advertisement read:

> just moved 2 the area and live on base.. not interesting anything
> serious, u must be able to get on base .. did this once b4 and had

---

[1] The members found Appellant guilty of the first specification by exception, and guilty of the second specification by exceptions and substitutions.

[2] Unless otherwise noted, all references in this opinion to the Uniform Code of Military Justice (UCMJ), Rules for Courts-Martial (R.C.M.), and Military Rules of Evidence are to the *Manual for Courts-Martial, United States* (2016 ed.).

[3] Appellant raises issue (3) pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982).

[4] Craigslist is an Internet website that hosts advertisements and discussion forums.

[5] Testimony revealed "w4m" means "woman for man."

[6] This opinion quotes an online advertisement, emails, and text messages as they appear in the record of trial, without correction but with redactions as appropriate.

a lot of fun.. prefer military.. hope 2 hear from us soon.. your pic gets mine..

Appellant responded that he was military and living on Eglin AFB and he attached a photo of himself wearing his cover and his Operational Camouflage Pattern uniform pants. In the photo, Appellant was naked from the chest down to his waist and his uniform pants were opened exposing his naked pelvis, except that Appellant covered his penis by holding his hand over it.[7] After Appellant and the individual who posted the advertisement, identified as "Molly Turner," exchanged names the following conversation occurred on 21 May 2017:

["Molly:"] Oh cool I can send a pic but I wanna b honest w u I'm 14 almost 15 but ok if u r

[Appellant:] Um…. i don't want to be rude but im not really comfortable with that.

["Molly":] K just wanted to b honest not 4 everyone

Unbeknownst to Appellant, "Molly Turner" was in fact Special Agent (SA) MB, an investigator with the Air Force Office of Special Investigations (AFOSI) at Eglin AFB. SA MB pretended to be "Molly" as part of an undercover law enforcement operation designed to catch individuals looking to have sex with children or to traffic children. After Appellant indicated he was not comfortable, SA MB put the email exchange in his "closed folder."

The next day, 22 May 2017, Appellant reinitiated the conversation with "Molly" by asking "Out of pure curiosity, what brought you to craigslist?" "Molly" responded "Just lookin for fun." Their correspondence by email and messaging continued and eventually turned sexual, including comments by Appellant regarding his preferred sexual activities, his experience which included oral sex, what he wanted to do with "Molly," and what he wanted "Molly" to do to him. In the course of the correspondence, Appellant also sent "Molly" a photo of his exposed torso with his penis covered by his hand and a message asking her whether she wanted "to see it." Further, Appellant requested "Molly" take a picture of herself masturbating. Finally, Appellant made arrangements to meet "Molly" outside a lodging building on Eglin AFB, informing "Molly" he was wearing red shorts and walking his dog. While walking towards lodging wearing red shorts and walking his dog, Appellant was met and apprehended by AFOSI agents.

---

[7] The Government did not allege a violation of the UCMJ for this photo. Appellant sent this photo before "Molly" stated her age.

## II. DISCUSSION

### A. Unreasonable Multiplication of Charges

#### 1. Additional Background

Specification 1 of the Charge alleged Appellant attempted to commit a "lewd act" upon "Molly Turner," a person Appellant believed to be a child who had not attained the age of 16 years, by intentionally communicating indecent language with the intent to arouse or gratify the sexual desires of any person on 17 June 2017. The specification included recitation of 11 messages[8] Appellant sent to "Molly Turner."

Specification 2 of the Charge alleged Appellant attempted to commit a "lewd act" upon "Molly Turner," a person Appellant believed to be a child who had not attained the age of 16 years, "to wit: asking 'Molly Turner' if she wanted 'to see it' after sending 'Molly Turner' a picture of himself with his torso exposed and his hand cupping[9] his genitalia via communication technology" with the intent to arouse or gratify the sexual desires of any person on or about 19 June 2017.

Before trial, the Defense filed a motion titled "Defense Motion to Dismiss: Unreasonable Multiplication of Charges" which *inter alia* requested that the military judge merge Specifications 1 and 2 for findings.[10] The Government opposed the motion. The military judge conducted a hearing at which he heard arguments. Prior to findings, he orally announced that he was going to deny the motion to dismiss and deny merging Specifications 1 and 2 for findings. The military judge reserved ruling on the appropriateness of merging Specifications 1 and 2 for sentencing purposes until after the members' verdict in findings.

After the members found Appellant guilty of Specifications 1 and 2 of the Charge, the military judge applied the five factors the United States Court of Appeals for the Armed Forces (CAAF) articulated in *United States v. Quiroz*, 55 M.J. 334, 338 (C.A.A.F. 2001), and concluded Specifications 1 and 2 were unreasonably multiplied and merged the two specifications for sentencing,

---

[8] The court members' findings excepted the words from one of the messages: "I like interesting, LOL."

[9] The court members' findings excepted the word "cupping" and substituted the word "obscuring."

[10] The Defense also filed a motion to dismiss Specification 1 for failure to state an offense. The military judge denied the motion to dismiss and Appellant makes no claim of error on appeal from this ruling.

thereby reducing the maximum punishment exposure from 35 years of confinement to 20 years of confinement.[11]

The military judge's sentencing instructions to the court members advised them: "[t]he offenses charged in Specification 1 and Specification 2 of the [C]harge are to be considered one for sentencing purposes; therefore, in determining an appropriate sentence in this case, you must consider them as one offense."

**2. Law**

We review a military judge's denial of relief for claims of unreasonable multiplication of charges for an abuse of discretion. *United States v. Campbell*, 71 M.J. 19, 22 (C.A.A.F. 2012) (citations omitted). We also review a military judge's selection of a remedy for an abuse of discretion. *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004). "A military judge abuses his discretion when: (1) the findings of fact upon which he predicates his ruling are not supported by the evidence of record; (2) if incorrect legal principles were used; or (3) if his application of the correct legal principles to the facts is clearly unreasonable." *United States v. Ellis*, 68 M.J. 341, 344 (C.A.A.F. 2010) (citing *United States v. Mackie*, 66 M.J. 198, 199 (C.A.A.F. 2008)). "The abuse of discretion standard is a strict one, calling for more than a mere difference of opinion. The challenged action must be 'arbitrary, fanciful, clearly unreasonable,' or 'clearly erroneous.'" *United States v. McElhaney*, 54 M.J. 120, 130 (C.A.A.F. 2000) (quoting *United States v. Miller*, 46 M.J. 63, 65 (C.A.A.F. 1997)).

Rule for Courts-Martial (R.C.M.) 307(c)(4) provides in pertinent part: "What is substantially one transaction should not be made the basis for an unreasonable multiplication of charges against one person." The Government may not needlessly "pile on" charges against an accused. *United States v. Foster*, 40 M.J. 140, 144 n.4 (C.M.A. 1994), *overruled on other grounds by United States v. Miller*, 67 M.J. 385, 388–89 (C.A.A.F. 2009); *see also* R.C.M. 906(b)(12). We consider the following non-exhaustive factors in determining whether unreasonable multiplication of charges has occurred:

> (1) Did the [appellant] object at trial that there was an unreasonable multiplication of charges and/or specifications?; (2) Is each charge and specification aimed at distinctly separate criminal acts?; (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality?; (4) Does the number of charges and specifications *unfairly* increase the

---

[11] The Defense had also requested the military judge merge or dismiss the Additional Charge and its Specification. The military judge denied the requested relief and Appellant makes no claim of error on appeal from this ruling.

appellant's punitive exposure?; and (5) Is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges?

*Quiroz*, 55 M.J. at 338 (internal quotation marks and citation omitted).

R.C.M. 906(b)(12) sets forth different remedies based on whether there is an unreasonable multiplication of charges for the purposes of findings or only for sentencing. It provides *inter alia*:

> (i) *As applied to findings.* Charges that arise from substantially the same transaction, while not legally multiplicious, may still be unreasonably multiplied as applied to findings. When the military judge finds, in his or her discretion, that the offenses have been unreasonably multiplied, the appropriate remedy shall be dismissal of the lesser offenses or merger of the offenses into one specification.

> (ii) *As applied to sentence.* Where the military judge finds that the nature of the harm requires a remedy that focuses more appropriately on punishment than on findings, he or she may find that there is an unreasonable multiplication of charges as applied to sentence. If the military judge makes such a finding, the maximum punishment for those offenses determined to be unreasonably multiplied shall be the maximum authorized punishment of the offense carrying the greatest maximum punishment.

*Id.*

### 3. Analysis

Appellant contends the military judge abused his discretion by merely merging Specification 2 with Specification 1 for purposes of sentencing, and failing to dismiss Specification 2. We conclude the military judge reasonably applied the *Quiroz* factors and did not abuse his discretion.

Appellant only alleges the military judge erred in his conclusion with respect to the fifth *Quiroz* factor—evidence of prosecutorial overreaching or abuse in the drafting of the charges. Specifically, Appellant argues that "the government charged both offenses as 'on or about' and so the first offense of 'on or about 17 June' would include two days later. Therefore the dates are not separate and distinct." Before we address whether the military judge erred in applying the fifth factor, a discussion of the military judge's findings with respect to the first four factors is beneficial.

The military judge found, and we agree, that the first factor favored Appellant. The Defense made a timely pretrial objection that the specifications were unreasonably multiplied.

As to the second factor—whether each charge and specification is aimed at a distinctly separate criminal act—the military judge found, and we agree, that this factor is almost equally balanced between Appellant and the Government but weighs slightly in favor of Appellant because "all charges and specifications are essentially based on a dozen or so statements made during a three-day portion of a weeks-long series of communications between [Appellant] and Molly Turner."

Although the military judge found this factor weighed slightly in favor of Appellant, he noted several facts favorable to the Government. The military judge determined that although the Government could have added the language from Specification 2 into Specification 1, Specification 2 was alleging conduct from a separate time, two days later. The military judge reasoned that although Specification 2 is part of a "continuing conversation" between Appellant and "Molly," Appellant had an interim of two days in which to cease and desist from attempting to communicate in an indecent manner with a child. Therefore, the military judge reasoned that "to that extent, the language of Specification 2 can be found to allege a separate and distinct criminal act wherein Appellant essentially asked whether a person who he thought was a child if she wanted to see his penis." The military judge concluded further that the statement alleged in Specification 2—asking "Molly Turner" if she wanted "to see it"—needed to be taken in the context of Appellant sending a picture of himself holding his unclothed, yet obscured, penis in his hand.

As to the third factor—whether the number of charges misrepresent or unreasonably exaggerate the Appellant's criminality—we further agree with the military judge that Specifications 1 and 2, taken together, cause the factor to weigh "slightly" in favor of Appellant, as Specifications 1 and 2 tend to exaggerate or misrepresent Appellant's criminality. Specifications 1 and 2 address Appellant's alleged lewd communications on different days. Although the military judge understood the Government's rationale for charging two separate specifications, the military judge was not convinced that the Government needed to allege contextual facts in Specification 2 and to, therefore, charge an additional offense.

As to the fourth factor—whether the number of charges unreasonably increased Appellant's punitive exposure—the military judge found, and we agree, that the factor weighs in favor of Appellant for sentencing. The military judge reasoned that the separate charging of one additional "indecent remark" by Appellant increased his punitive exposure by an additional 15 years of confinement.

As to the fifth factor—whether there was prosecutorial overreaching in drafting the charges—the military judge found, and we agree, this factor weighs in favor of the Government. The military judge concluded that although

the Government could have charged just one specification alleging the communication of all the indecent language, he did not find overreaching on the part of the Government. The military judge noted that the Government could potentially have parsed out each of the dozen or so indecent statements into separate specifications, "something that surely would have been unreasonable under the circumstances." The fact that the Government did not do so pointed to some "Government restraint" in the mind of the military judge. Additionally, the military judge found "a valid, if debatable basis" for breaking out the alleged offenses into two specifications at least for the purposes of findings.

Finally, the military judge found that, although several factors weighed in favor of Appellant, there was not any clearly unreasonable charging decision by the Government. Although he described his decision as a "close call," the military judge concluded that the *Quiroz* factors did not weigh heavily in favor of a determination that the charging scheme adopted by the Government was unreasonable for the purposes of findings. However, he did conclude that the charging scheme adopted by the Government was unreasonable for the purposes of sentencing, and merged Specifications 1 and 2 of the Charge for sentencing purposes.

With regard to Appellant's claim of error given the dates of the charged offenses, we note that the Government did not charge "on or about" on both specifications of the charge. Specification 1 alleges "on 17 June 2017" and Specification 2 alleges "on or about 19 June 2017." We agree with the military judge's conclusion that Specification 2 alleged a different part of the conversation two days later and Appellant had an interim of two days to cease and desist after the communications in Specification 1. Therefore, we are not persuaded by Appellant's argument that the dates charged are not "separate and distinct."

Appellant also contends that the Government could have presented evidence of the context of the photo and message Appellant sent in Specification 2 without charging it and as the dates are not specifically defined. In Appellant's view, the fifth factor weighs against the Government and the military judge erred finding otherwise. We are not persuaded. Although the Government may have presented evidence of context without charging it, the Government was not required to do so in this case. As noted above, we concur with the military judge's finding that the Government had a "valid, if debatable basis" for charging the two specifications separately, at least for the purposes of findings. We conclude the military judge did not abuse his discretion by declining to dismiss either specification of the Charge and instead merging Specifications 1 and 2 for sentencing.

**B. Legal and Factual Sufficiency**

**1. Additional Background**

SA MB testified that he was trained to utilize an "online persona" where he "acts in an undercover capacity basically as a role of [a] minor in these cases, and they enter known areas where minors have been known to go and known to have been exploited." The online persona SA MB created was "Molly Turner," a 14-year-old female living with her mother on Eglin AFB. SA MB used the Craigslist casual encounters section to post an advertisement because his training identified this section as common for online solicitation of children. This section was intended for adults and required the user to verify they were over 18 years old by clicking on a notification which SA MB did prior to posting his advertisement.

Once he posted the advertisement, SA MB testified that he waited for several hours for replies. When he began communicating online with Appellant, he stated within the first few messages his undercover age of 14 years old. His stated purpose for this was he does "not want to entrap them in any way. [He] want[s] them to know up front that this is a 14-year-old minor." In order to ensure against entrapment, SA MB was trained to let the other individual control the "subject, pace and tone" of the conversation. SA MB explained he avoided using sexually explicit terms of his own to avert leading the subject matter in that direction.

After Appellant reinitiated the conversation with "Molly" on 22 May 2017, and "Molly" responded on 24 May 2017 that she was looking for fun, Appellant questioned "Molly" whether she was having any luck. After Molly responded she was not, Appellant questioned whether she had tried looking for "guys" her own age. "Molly's" response was that they were not mature enough.

The conversation continued on 24 May 2017 with general chatting until "Molly" asked Appellant if he had any photos. After Appellant asked "Molly" what kind of photos she was referring to, "Molly" replied "Normal ones lol." On 25 May 2017, Appellant asked "Molly" what she planned on doing if she found someone; "Molly" did not respond. On 28 May 2017, Appellant asked if "Molly's" parents were enlisted and "Molly" responded on 30 May 2017 that her mother was enlisted. "Molly" explained her failure to respond was because she had been on vacation.

On 31 May 2017, Appellant asked: "Sorry if im being a pest, im just really curious what you meant when you said you were just looking for fun?" On 14 June 2017, he received the following response: "Hi srry didn't check this much just looking for sum1 to teach me." Appellant asked what "Molly" wanted to be

taught and "Molly" stated "idk[12] how have evr done this before." Appellant then asked what she was thinking of when she made the advertisement and "Molly's" response was "For fun if ur not dow[n]? it k….. don't wanna b led on." Appellant then told "Molly" that he "may be down for certain things but id like to here what your curious about first."

On Friday, 16 June 2017, Appellant mentioned that his wife and kids would be gone so he would have his house to himself. He wrote, "[i]f theres anything you want to learn, im up for at least telling you about it, maybe more, im just paranoid someone will find out and then both our lives are ruined." Later, "Molly" requested Appellant switch to texting or the Kik application[13] telling Appellant that her mother sometimes looks at her phone. After some more email exchanges, Appellant and "Molly" switched from communicating by email to messaging via Kik.

Once they moved their conversation to Kik on 17 June 2017, Appellant asked: "So tell me what want to learn about." "Molly" responded by asking if Appellant was working on Saturday and what he did. Appellant's response was that he did not want to get too specific and that he was "an in between guy." At that point the following conversation occurred:

> ["Molly:"] To answer ur question I'm kind of embarrassed
>
> ["Molly:"] I don't hav much experience
>
> [Appellant:] That's ok. I didn't have any until I was 20
>
> [Appellant:] I won't judge. Ask away
>
> ["Molly:"] wht do u like?
>
> [Appellant:] As far as?
>
> ["Molly:"] With girls lol
>
> [Appellant:] Ah lol . . . Like what do I like in a girl or what do I like to do with a girl?
>
> ["Molly:"] Hmmm BOTH lol [emoji with tongue sticking out]
>
> [Appellant:] Well I like a girl that puts effort into herself and has confidence. With a girl I'm not sure. It varies
>
> ["Molly:"] O cool

---

[12] "Idk" means "I don't know."

[13] According to the testimony at trial, Kik is a third-party messaging application where users can communicate back and forth. The Kik messages were taken from Prosecution Exhibit 3 admitted at trial.

[Appellant:] I'm not sure the question you're asking[.] Are you talking about dating or . . . Is there anything specific that you want to know? There's a million things I could cover.

["Molly:"] Well I don't kno much lol[.] Boys my age r imature… my experiences hav been awkwrdd

[Appellant] So your look in for more "mature" experiances?

["Molly:"] Def lol

[Appellant] Ah. Well start with something specific you want to know about and go from there

["Molly:"] My last bf we jus touched and kissed[.] He was weird

. . .

[Appellant:] And your looking for someone more mature to go farther

["Molly:"] Ya but I dont want it 2 b weird like tht

. . .

[Appellant:] Understand How far are you wanting to go?

["Molly:"] idk r u interestd or just teasing I don wanna be led on

[Appellant:] I'm really interested, I just really don't want this to blow up in my face and I wind up in prison. It's something that'd have to be extremely secret? Secret. Does your mom know about your email? Or kik?

The conversation continued with Appellant sending "Molly" what appears to be a mug shot picture of an unknown individual and Appellant explaining that "[t]his guy is why I'm so paranoid[.] He got busted talking online with someone who was 15 and he's going to prison[.]It's why I'm really hesitant about sending face pics or anything." "Molly's" response was "tht is scary[.] I promise I won't tell." Later in the conversation "Molly" told Appellant she would like to know what Appellant could teach her, and Appellant's response was that it depended how far she wanted to go. After responding that she was "up 4 anything," Appellant told "Molly" they could "start with just touching. And work [their] way up from there." Appellant then asked "Molly" where she wanted to start and "Molly's" response was that she "don't rlly kno much. Will u be gentle?" Appellant responded that he would and "Molly" asked, "What things do u like best[?]" Appellant's response was "Well… things I like you might not want to try yet." "Molly" responded "Rlly?" Appellant then told her,

"Unless you really want to know." Molly responded, "I kinda do." The conversation then turned to Appellant describing oral sex, digital penetration, and asking "Molly" about masturbating.

Appellant asked "Molly" if she had ever touched herself, "as in masturbated?" and after "Molly" responded, "[W]hat do you think lol," Appellant's response was "Prove it." After confirming "Molly" was alone and after "Molly" stated she was in her room, the following conversation occurred.

> [Appellant:] Reach down and touch yourself and take a pic

> [Appellant:] Lock your door

"Molly" explained she had a bad experience with pictures online, and she told Appellant he could take as many pictures as Appellant wanted "when we meet." Appellant then asked what else "Molly" wanted to know about and "Molly" responded: "Well what do u want me to do 4 u lol." Appellant asked "Molly" about what she thought about "blowjobs" and "hand job[s]." "Molly" asked Appellant if that is what he wanted and he responded "Yes."

The conversation continued on 17 June 2017, with Appellant explaining in graphic sexual detail about what he might do if they met. The conversation on 17 June 2017 included all the statements alleged in Specification 1 of the Charge.

The conversation continued into 18 June 2017, with topics including "Molly" helping her mother clean the house. On 19 June 2017, Appellant asked "Molly" to meet "real quick." He told "Molly" that he would send a picture for her to "sleep on," but he was not sure if she would like it. Appellant then asked "Molly" if she would send him a picture if he were to send her one. He then sent a picture of his clothed torso and asked, "Ok. Tell me What you've been wanting to see?"

Appellant told "Molly" he did not want to ask for a picture because he did not want to pressure her into anything she was not comfortable with. "Molly's" response was Appellant could send pictures if he wanted to and Appellant sent "Molly" a picture of his partially naked torso with his hand over his genitalia. Appellant then asked "Molly," "Ok I'm gonna ask. Do you want to see 'it'? Or wait." "Molly's" response was that it was up to Appellant with whatever he was comfortable with. After Appellant told "Molly" that he wanted her "to say yes or no," because he did not want to be "intrusive," "Molly" responded, "I'm ok w it." When Appellant questioned "Molly" "Meaning you want to see it?" she did not respond.

Several hours later, still on 19 June 2017, Appellant reinitiated the conversation with "Molly." After some small talk, including that Molly's mother woke

her up that morning, Appellant asked if "Molly" was alone in her house. Appellant then asked "Molly" if she wanted to "come here?" Molly's response was that she thought it was better to meet away from housing and asked Appellant if he knew where the "motel things are by the water?" Appellant then questioned whether they were just going to meet there because he did not know if he could get "a room there or anything." "Molly's" response was she just meant to meet there, and when Appellant asked when she wanted to meet, "Molly" told Appellant she would message him once her mother left.

As they continued coordinating their meeting plans, "Molly" asked Appellant if he got a room and Appellant stated that he did not because they would ask his name. When "Molly" asked Appellant if he was bringing protection, he responded "I thought we were just meeting." Appellant advised he would be wearing red shorts and walking a dog. AFOSI agents apprehended Appellant outside of lodging at Eglin AFB wearing red shorts and walking his dog. Subsequent investigative steps revealed Appellant was the person SA MB was communicating with both via Craigslist emails and the Kik messaging system. As part of its investigation, AFOSI seized Appellant's electronic devices and did not find Internet searches indicating sexual interest in children, child pornography, other sexual chats with minors, or visits to child pornography websites on the devices.

**2. Law**

We review issues of legal and factual sufficiency de novo. *United States v. Washington*, 57 M.J. 394, 399 (C.A.A.F. 2002) (citation omitted). Our assessment of legal and factual sufficiency is limited to the evidence produced at trial. *United States v. Dykes*, 38 M.J. 270, 272 (C.M.A. 1993) (citations omitted).

The test for legal sufficiency of the evidence is "whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner*, 25 M.J. 324 (C.M.A. 1987) (citation omitted); *see also United States v. Humpherys*, 57 M.J. 83, 94 (C.A.A.F. 2002) (citation omitted). "Beyond a reasonable doubt" does not mean that the evidence must be free from conflict. *United States v. Wheeler*, 76 M.J. 564, 568 (A.F. Ct. Crim. App. 2017) (citing *United States v. Lips*, 22 M.J. 679, 684 (A.F.C.M.R. 1986)), *aff'd*, 77 M.J. 289 (C.A.A.F. 2018). "[I]n resolving questions of legal sufficiency, we are bound to draw every reasonable inference from the evidence of record in favor of the prosecution." *United States v. Barner*, 56 M.J. 131, 134 (C.A.A.F. 2001) (citations omitted).

The test for factual sufficiency is "whether, after weighing the evidence in the record of trial and making allowances for not having personally observed the witnesses, [we are] convinced of the [appellant]'s guilt beyond a reasonable

doubt." *Turner*, 25 M.J. at 325. "In conducting this unique appellate role, we take 'a fresh, impartial look at the evidence,' applying 'neither a presumption of innocence nor a presumption of guilt' to 'make [our] own independent determination as to whether the evidence constitutes proof of each required element beyond a reasonable doubt.'" *Wheeler*, 76 M.J. at 568 (alteration in original) (quoting *Washington*, 57 M.J. at 399).

With respect to the affirmative defense of entrapment, R.C.M. 916(g) states: "It is a defense that the criminal design or suggestion to commit the offense originated in the Government and the accused had no predisposition to commit the offense." The defense has the initial burden of showing some evidence that an agent of the Government originated the suggestion to commit the crime. *United States v. Whittle*, 34 M.J. 206, 208 (C.M.A. 1992). Once raised, "the burden then shifts to the Government to prove beyond a reasonable doubt that the criminal design did not originate with the Government or that the accused had a predisposition to commit the offense . . . ." *Id*. (citations omitted). When a person accepts a criminal offer without an extraordinary inducement to do so, he demonstrates a predisposition to commit the crime in question. *Id.* (citations omitted).

In *United States v. Howell*, 36 M.J. 354, 359 (C.M.A. 1993), our superior court, quoting *United States v. Stanton*, 973 F.2d 608, 610 (8th Cir. 1992), explained that the first element of entrapment is an inducement of government agents to commit the crime. "Inducement" means more than merely providing the appellant the means or opportunity to commit a crime. *Id*. at 360. Instead, the Government's conduct must:

> create[ ] a substantial risk that an undisposed person or otherwise law abiding citizen would commit the offense. Inducement may take different forms, including pressure, assurances that a person is not doing anything wrong, persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy, or friendship.

*Id*. at 359–60 (emphasis, internal quotation marks, and citations omitted).

The Government may use undercover agents and informants to ferret out crime and afford opportunities or facilities for criminals to act upon without implicating the defense of entrapment. *Jacobson v. United States*, 503 U.S. 540, 548 (1992); *see also Howell*, 36 M.J. at 358; *Whittle*, 34 M.J. at 208. "Artifice and stratagem may be employed to catch those engaged in criminal enterprises." *Sorrells v. United States*, 287 U.S. 435, 441 (1932) (citations omitted); *see also United States v. Russell*, 411 U.S. 423, 435–36 (1973). For example, law enforcement officers may pretend to be someone other than a government agent. *See Howell*, 36 M.J. at 358.

Proof that the attempted offenses actually occurred or were completed by an appellant was not required. *See United States v. Church*, 29 M.J. 679, 686 (A.F.C.M.R. 1989), *aff'd*, 32 M.J. 70 (C.M.A. 1991); *see also United States v. Talkington*, No. ACM 37785, 2013 CCA LEXIS 357, at *10 (A.F. Ct. Crim. App. 26 Apr. 2013) (unpub. op.), *aff'd*, 73 M.J. 212 (C.A.A.F. 2014). However, at the time of the acts, an appellant must have intended every element of the attempted offenses. *See Manual for Courts-Martial, United States* (2016 ed.) (*MCM*), pt. IV, ¶ 4.b.

In order to find Appellant guilty of an attempt in violation of Article 80, UCMJ, as charged here, the Government was required to prove the following elements beyond a reasonable doubt: (1) that Appellant did a certain overt act; (2) that the act was done with the specific intent to commit a certain offense under the code; (3) that the act amounted to more than mere preparation; and (4) that the act apparently tended to effect the commission of the intended offense. *See MCM,* pt. IV, ¶ 4.b. The elements for the underlying offense of sexual abuse of a child by indecent communication in violation of Article 120b, UCMJ, 10 U.S.C. § 920b, as charged here, required the Government to prove beyond a reasonable doubt: (1) that Appellant intentionally communicated indecent language to a child under the age of 16 years; and (2) that he did so with the intent to arouse or gratify the sexual desires of any person. *See MCM*, pt. IV, ¶ 45b.b.(4)(d). "'Indecent' language is that which is grossly offensive to modesty, decency, or propriety, or shocks the moral sense, because of its vulgar, filthy, or disgusting nature, or its tendency to incite lustful thought. Language is indecent if it tends reasonably to corrupt morals or incite libidinous thoughts." *MCM*, pt. IV, ¶ 89.c.

Appellant's conviction for solicitation to commit an offense in violation of Article 134, UCMJ, as charged here, required the members to find the following elements beyond a reasonable doubt: (1) that Appellant solicited "Molly Turner" to commit a certain offense under the code; (2) that Appellant did so with the intent that the offense actually be committed; and (3) that, under the circumstances, Appellant's conduct was of a nature to bring discredit upon the armed forces. *See MCM*, pt. IV, ¶ 105.b. The elements for the underlying offense of production of child pornography in violation of Article 134, UCMJ, as charged here, required the Government to prove beyond a reasonable doubt: (1) knowing and wrongful production of child pornography; and (2) under the circumstances, the conduct was prejudicial to good order and discipline in the armed forces or of a nature to bring discredit on the armed forces.[14] *See MCM*,

---

[14] In our court, it is settled law that "the solicitation of another person to commit an offense which, if committed by one subject to the UCMJ, would be punishable under

pt. IV, ¶ 68b.b.(4). "Child pornography" is defined as "material that contains either an obscene visual depiction of a minor engaging in sexually explicit conduct or a visual depiction of an actual minor engaging in sexually explicit conduct." *MCM*, pt. IV, ¶ 68b.c.(1). "Sexually explicit conduct" includes the "actual or simulated . . . masturbation . . . [or] lascivious exhibition of the genitals or pubic area of any person." *MCM*, pt. IV, ¶ 68b.c.(7).

Statements or conduct under circumstances which reveal them to be in jest do not constitute the offense of solicitation. *See United States v. Orostin*, 30 M.J. 520, 523 (A.F.C.M.R. 1990). The person solicited must know that the act requested is part of a criminal venture. *United States v. Higgins*, 40 M.J. 67, 68 (C.M.A. 1994).[15]

### 3. Analysis

Appellant provides two reasons why his convictions are legally and factually insufficient. First, Appellant avers the Government did not prove beyond a reasonable doubt that he was not entrapped by SA MB. Second, as to the solicitation conviction, he posits that the Government did not prove beyond a reasonable doubt that the request was of a serious nature and that "Molly" knew the request was part of a criminal venture.

#### a. Entrapment

At the close of the findings portion of the court-martial, the military judge found a sufficient basis to instruct the court members that "[t]he evidence has raised the issue of entrapment in relation to each of the charged offenses," and "[i]n order to find [Appellant] guilty, you must be convinced beyond a reasonable doubt that [Appellant] was not entrapped." In other words, the absence of entrapment essentially became part of the case the Government had to prove beyond a reasonable doubt in order to secure a conviction.

We are satisfied beyond a reasonable doubt Appellant was not entrapped. An accused who commits an offense without an extraordinary inducement from

---

the UCMJ, is an offense cognizable under Article 134[, UCMJ]." *United States v. Knarr*, 80 M.J. 522, 530 n.6 (A.F. Ct. Crim. App. 2020) (citing *United States v. Robertson*, 17 M.J. 846, 851 (N.M.C.M.R. 1984)); *see United States v. Hanner*, No. ACM S28497, 1993 CMR LEXIS 61, at *6 (A.F.C.M.R. 28 Jan. 1993) (unpub. op.) (citations omitted) ("The person solicited can be a civilian.").

[15] The military judge instructed the members that proof that the offense of production of child pornography actually occurred is not required; however, it must be proven beyond a reasonable doubt that the accused specifically intended that "Molly Turner" commit every element of the offense of production of child pornography. *See Military Judges' Benchbook*, Dept. of the Army Pamphlet 27-9 at 935 (10 Sep. 2014).

a government agent to do so demonstrates a predisposition to commit the offense, and is not the victim of entrapment. *Whittle*, 34 M.J. at 208 (citations omitted). "Extraordinary inducement" requires more than simply being presented with the opportunity to commit the crime. *See id.* at 209 (citations omitted).

Beginning with the posted advertisement with SA MB posing as "Molly Turner," and the email and Kik messages that ensued, the Government presented the *opportunity* for Appellant to commit the offenses of which he was convicted. At the outset of their correspondence, "Molly" informed Appellant that she was 14 years old, but Appellant then chose to respond to, and continue to engage in, a series of messages with her for several days. Appellant acknowledged that "Molly" was a 14-year-old girl living on base with her mother. While "Molly" mentioned touching and kissing with "her" prior boyfriend, it was Appellant who escalated the conversation to use explicit and graphic sexual terms. "Molly" did not use sexually explicit terms, nor did she request any sexually explicit images, nor did she coerce or threaten Appellant into any course of action. It was Appellant, not "Molly," who repeatedly requested "Molly" to meet him and who walked to meet her in person. *See Sorrells*, 287 U.S. at 441 ("It is well settled that the fact that officers or employees of the Government merely afford opportunities or facilities for the commission of the offense does not defeat the prosecution.").

Appellant now claims (1) the criminal design or suggestion to commit the offenses originated with law enforcement, and (2) "SA MB's actions substantially increased the risk that the undisposed [Appellant] would commit the charged offenses because SA MB controlled the tone, pace and subject of the conversations." Both claims relate to whether the Government induced Appellant to commit the offenses, the first element of the entrapment defense under *Howell*.

Specifically, Appellant alleges *inter alia* that law enforcement posted the advertisement in the adults-only casual encounters section, and that it was the agent "who said 'Molly' was looking for a mature man who could teach her things she had little practice in doing." Moreover, Appellant asserts SA MB was the first to ask for pictures, telling Appellant at one point he could take pictures when they met, and SA MB was the first to mention kissing and touching. Appellant further claims it was SA MB and not Appellant who reinitiated the conversation after 14 days. Appellant contends that SA MB had to assure Appellant that "Molly's" mother would never find out and had to talk Appellant through his hesitations. Further, Appellant contends that he "made attempts to change the subject when SA MB would steer the conversation towards sexually explicit conversations" and evidence of being led and having hesitation

demonstrates a lack of predisposition and that SA MB's control over the tone of the conversation overcame Appellant's hesitation.

Although inducement "may take different forms, including pressure . . . persuasion . . . threats, coercive tactics, harassment, [and] promises of reward," Appellant was induced only if the Government created "a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense." *Howell*, 36 M.J. at 359–60 (emphasis, internal quotation marks, and citations omitted).

The Government's actions in Appellant's case did not create such a risk and did not constitute inducement. Appellant was very much not the "unwary innocent" to be protected from government inducement. *Id.* at 358 (citations omitted). Appellant did not hesitate to continue messaging "Molly" after she told him that she was a 14-year-old girl living on base with her mother. "Molly" made it clear that she was asking for "normal" pictures. Although "Molly" was the first to mention kissing and touching, she was generically describing her past experiences—not sexual acts she wanted to perform with an adult like Appellant or have Appellant perform on her. Appellant willingly described, in explicit graphic sexual detail, the sexual activities he preferred and what he wanted to do with "Molly," whom he believed to be a 14-year-old girl. The fact that "Molly" reinitiated the conversation after a two-week delay, and that "she" questioned Appellant about what he liked and wanted to teach her, did not coerce Appellant's behavior. Rather, it merely provided an *opportunity* for Appellant to commit his crimes. Further, Appellant himself noted his hesitation was because he did not want to be caught and go to prison. Despite Appellant's characterizations, none of the Government's actions rose to the level of inducement.

We conclude that Appellant demonstrated a predisposition to commit the three offenses of which he was convicted. Appellant reinitiated communications with "Molly," sending ten different indecent communications and ultimately asking "Molly" to take a picture while masturbating. Appellant is correct that AFOSI agents found no Internet searches indicating sexual interest in children, no child pornography, no other sexual chats with minors, and no visits to child pornography websites on the devices seized from his residence. However, those facts are not dispositive as to whether Appellant was predisposed to attempt to engage in sexual abuse of a child or the solicitation of child pornography. Similarly, those facts are not necessary precursors to, or prerequisites for, someone to engage in attempted sexual abuse of a child or the solicitation of child pornography. As described above, Appellant took the initiative to commit the offenses after being provided the mere opportunity to do so. By seizing the criminal opportunity presented to him, he demonstrated his predisposition.

Finding beyond a reasonable doubt that the Government did not induce Appellant to commit the three offenses of which he was convicted, and that Appellant was predisposed to commit all three, we conclude there was no entrapment. Having considered the evidence produced at trial in the light most favorable to the Government, we also conclude that the evidence was legally sufficient for the court members to find that the Government proved beyond a reasonable doubt that Appellant was not entrapped.

Having decided there was no entrapment, we next consider whether the evidence is legally and factually sufficient to support the findings of guilty for attempted sexual abuse of a child and soliciting another to commit the offense of child pornography. When we review the solicitation offense, *infra*, we will address Appellant's challenge that his request that "Molly" take a picture masturbating was not "of a serious nature" and that "Molly" did not know the request was part of a criminal venture.

### b. Attempted Sexual Abuse of a Child

Even after "Molly" told Appellant that she was a 14-year-old child living on base, Appellant decided to continue messaging her. Appellant was the one who initiated a sexually graphic conversation with "Molly," eventually describing in detail the sexual acts that Appellant preferred, that he wanted to perform on "Molly," and that he wanted her to perform on him. The Kik messages Appellant wrote to "Molly" constituted the offense of attempting to commit a lewd act on "Molly" by communicating indecent language to her, including the language for which the members found Appellant guilty.

In assessing legal sufficiency, we are limited to the evidence produced at trial and required to consider it in the light most favorable to the Prosecution. The bulk of the evidence produced at trial consisted of Appellant's own words in the form of the Kik messages he sent "Molly." While not all the evidence was free from conflict, it did not have to be. *See Wheeler*, 76 M.J. at 568 (citation omitted). We conclude that a rational factfinder could have found beyond a reasonable doubt all the essential elements for both specifications of attempted sexual abuse of a child. Furthermore, in assessing factual sufficiency, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt of both specifications beyond a reasonable doubt. Therefore, we find Appellant's conviction of the Charge and its two specifications are legally and factually sufficient.

### c. Solicitation to Produce Child Pornography

Appellant argues the solicitation conviction "is legally and factually insufficient because the Government was unable to prove that the request was of a serious nature and that 'Molly' knew the request was of a criminal venture."

The Government's proof that Appellant solicited "Molly" to produce child pornography was strong. Appellant asked "Molly" if she had ever touched herself "as in masturbated?" Appellant then told her "Prove it;" "Reach down and touch yourself and take a pic;" and "Lock your door." That left little doubt that Appellant solicited "Molly" to take a picture of masturbation and the lascivious display of her genitals. Such a production of a picture would have been knowing and wrongful, and we further find Appellant's conduct was of a nature to bring discredit upon the armed forces.

As to Appellant's arguments on appeal, Appellant's own words demonstrate the request was of a serious nature and obviously a criminal venture. Asking a purported 14-year-old child to take a picture while masturbating is a violation of the UCMJ and Title 18, United States Code.

We also considered whether the defense of impossibility applies since "Molly Turner" was an online persona. The "general rule is that an accused should be treated in accordance with the facts as he or she supposed them to be." *United States v. Riddle*, 44 M.J. 282, 286 (C.A.A.F. 1996) (citations omitted). "It is unequivocally the rule that impossibility is no defense to the crime of attempt in violation of Article 80, UCMJ." *United States v. Knarr*, 80 M.J. 522, 531 (A.F. Ct. Crim. App. 2020) (citation omitted). This court recently held in *Knarr* that, provided the elements of the offense are otherwise satisfied, the impossibility of the crime solicited is not a defense to solicitation in violation of Article 134, UCMJ. 80 M.J. at 531.[16]

We conclude that a reasonable factfinder could have found beyond a reasonable doubt all the essential elements of soliciting another to produce child pornography. Furthermore, in assessing factual sufficiency, after weighing all the evidence in the record of trial and having made allowances for not having personally observed the witnesses, we are convinced of Appellant's guilt beyond a reasonable doubt. Therefore, we find Appellant's conviction of the Additional Charge and its specification both legally and factually sufficient.

---

[16] As this court did in *Knarr*, although not asserted by Appellant, we note that the offense might also appear facially impossible because "Molly," as a 14-year-old civilian, was not subject to UCMJ jurisdiction and could not "commit a certain offense under the code." *MCM*, pt. IV, ¶ 105.b.(1); *see* Article 2, UCMJ, 10 U.S.C. § 802 (identifying categories of persons subject to the UCMJ). However, as noted previously, in our court, it is settled law that "the solicitation of another person to commit an offense which, if committed by one subject to the UCMJ, would be punishable under the UCMJ, is an offense cognizable under Article 134[, UCMJ]." *Knarr*, 80 M.J. at 530 n.6 (citing *United States v. Robertson*, 17 M.J. 846, 851 (N.M.C.M.R. 1984)); *see United States v. Hanner*, No. ACM S28497, 1993 CMR LEXIS 61, at *6 (A.F.C.M.R. 28 Jan. 1993) (unpub. op.) (citations omitted) ("The person solicited can be a civilian.").

**C. Timeliness of Appellate Review**

### 1. Additional Background

Appellant's case was originally docketed with this court on 6 March 2019. The delay in rendering this decision after 6 September 2020 is presumptively unreasonable. However, we determine there has been no violation of Appellant's right to due process and a speedy post-trial review and appeal.

### 2. Law

We review de novo whether an appellant has been denied the right to due process and a speedy post-trial review and appeal. *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006) (citations omitted). A presumption of unreasonable delay arises when appellate review is not completed and a decision is not rendered within 18 months of the case being docketed before the court. *Id.* at 142. When a case is not completed within 18 months, such a delay is presumptively unreasonable and triggers an analysis of the four factors laid out in *Barker v. Wingo*, 407 U.S. 514, 530 (1972): "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice." *Moreno*, 63 M.J. at 135 (citations omitted). *Moreno* identified three interests for prompt appeals: (1) prevention of oppressive incarceration; (2) minimizing anxiety and concern; and (3) limitation of the possibility of impairment of ability to present a defense at a rehearing. *Id.* at 138–39.

"We analyze each factor and make a determination as to whether that factor favors the Government or [Appellant]." *Id.* at 136 (citation omitted). Then, we balance our analysis of the factors to determine whether a due process violation occurred. *Id.*; *see also Barker*, 407 U.S. at 533 ("[C]ourts must still engage in a difficult and sensitive balancing process."). "No single factor is required for finding a due process violation and the absence of a given factor will not prevent such a finding." *Moreno*, 63 M.J. at 136 (citation omitted). However, where an appellant has not shown prejudice from the delay, there is no due process violation unless the delay is so egregious as to "adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006).

### 3. Analysis

The court is affirming the findings and sentence in this case. Appellant, who did not receive a sentence of confinement, has not alleged any prejudice resulting from the presumptively unreasonable delay, and we find none.

Finding no *Barker* prejudice, we also find the delay is not so egregious that it adversely affects the public's perception of the fairness and integrity of the military justice system. As a result, there is no due process violation. *See*

*Toohey*, 63 M.J. at 362. In addition, we determine that, even in the absence of a due process violation, the delay does not merit relief. *See United States v. Tardif*, 57 M.J. 219, 223–24 (C.A.A.F. 2002). Applying the factors articulated in *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), *aff'd*, 75 M.J. 264 (C.A.A.F. 2016), we conclude that the time taken to review Appellant's case is not unreasonable and relief based on the delay is unwarranted.

### III. CONCLUSION

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the findings and sentence are **AFFIRMED**.

FOR THE COURT

CAROL K. JOYCE
Clerk of the Court